COUNTY OF SUFFOLK, a municipal corporation, Robert Alcorn, Christopher S. George, Fred Harrison, Peter Maniscalco, William P. Quinn, and Custom Extruders, Inc., Plaintiffs,

v.

LONG ISLAND LIGHTING COMPANY, Stone & Webster Engineering Company, Charles R. Pierce, Wilfred O. Uhl, Charles J. Davis, and Andrew W. Wofford, Defendants.

No. 87–CV–646 (JBW).

United States District Court, E.D. New York.

Feb. 13, 1989.

As Amended April 14, 1989.

Hill, Betts & Nash by Bernard Persky, Kenneth F. McCallion, Gregory W. O'Neill, James W. Johnson and Lawrence P. Kolker, New York City, E. Thomas Boyle, Co. Atty. of Suffolk County, Hauppauge, N.Y. and Kirkpatrick & Lockhart by Lawrence Coe Lanpher and Karla Letsche, Washington, D.C., for plaintiff Suffolk County.

Vladeck, Waldman, Elias & Engelhard by Judith P. Vladeck, Karen Honeycutt and Julian Birnbaum, New York City, for the individual Ratepayer plaintiffs.

Bower & Gardner by James D. Harmon, Jr. and Michael Eng, New York City, for U.S.

Farrell, Fritz, Caemmerer, Cleary, Barnosky & Armentano by George J. Farrell and Delores Fredrich, Uniondale, N.Y. and Edward T. O'Brien, Co. Atty. of Nassau County, Mineola, N.Y., for proposed intervenor County of Nassau.

Peter L. Zimroth, Corp. Counsel of City of New York (Peter Lehner, of counsel), New York City, for proposed intervenor City of New York.

Reilly, Like & Schneider by Irving Like, Babylon, N.Y. and Flower & Plotka by Edward Flower, Bay Shore, N.Y., for plaintiff Custom Extruders, Inc. and proposed intervenors Business Ratepayer plaintiffs.

Marilyn A. Marlek, Bethpage, N.Y. and Cahill, Gordon & Reindel by Charles A. Gilman, New York City, for proposed intervenor Grumman Corp.

Leibowitz & Peterson by Ira Leibowitz, Garden City, N.Y. and Parker, Chapin, Flatteau & Kimpl by Gary Neil Sazar, Jericho, N.Y., for proposed intervenor Long Island Ass'n.

Lewis & Greer by Lou Lewis, Poughkeepsie, N.Y., for proposed intervenor Shoreham–Wading River Cent. School Dist.

Shea & Gould by Michael Lesch, Ronald H. Alenstein and John G. Nicolich, New York City, for the individual defendants.

Susan E. Silverman, Hicksville, N.Y., for defendant Long Island Lighting Co.

Mudge Rose Guthrie Alexander & Ferdon by Laurence V. Senn, Jr., New York City, for defendant Stone & Webster Engineering.

Robert Abrams, New York State Atty. General's Office, New York City.

## AMENDED MEMORANDUM AND ORDER

## CLASS CERTIFICATION

WEINSTEIN, District Judge.

## TABLE OF CONTENTS

I. PROCEDURAL BACKGROUND
II. AMENDMENT OF COMPLAINT
III. CLASS CERTIFICATION
 A. *Prerequisites of Class Action Under Rule 23(a)*

1. Financial Resources of Class Representatives.
2. Ethical–Financial Issues for Attorneys.
3. Supremacy of Federal Rule of Ethics.
4. Antagonism of Class Representatives.
5. Lack of Knowledge of Class Representatives.
6. Political Motivations of Class Representatives.
7. Intra–Class Conflicts.
B. *Prerequisites of Class Action Under Rule 23(b)(1)(B)*
C. *Class Counsel*
D. *Suffolk County's Right to Opt Out of the Class*
E. *United States*
IV. INTERVENTION
A. *Intervention as of Right*
B. *Permissive Intervention*
V. CONCLUSION

## I. PROCEDURAL BACKGROUND

In this action against the Long Island Lighting Co. (LILCO) and others associated with it, the plaintiffs—five individual ratepayers of LILCO—allege various violations of the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 et seq. The substance of the plaintiffs' complaint is that the defendants made deliberate misrepresentations to the New York Public Service Commission (PSC) about the Shoreham and Jamesport nuclear power plant projects in order to obtain electric rate increases. These fraudulently obtained increases, say the plaintiffs, have been and continue to be reflected in their utility bills. The plaintiffs bring this action on behalf of themselves and a class of present and former LILCO ratepayers.

These five individuals had been plaintiffs with Suffolk County and a corporation, Custom Extruders, Inc. By memorandum, 710 F.Supp. 1405 (E.D.N.Y.1988), this court informed the parties of its intention to deny the plaintiffs' motion for class certification with representation of the class by attorneys for Suffolk. Suffolk and its attorneys could not adequately represent the interests of the class. In view of the County's longstanding opposition to the opening of the Shoreham plant and its entanglement with LILCO in various other pending litigations, the County had interests which might differ considerably from those of the class as a whole.

Subsequently, at a hearing on September 19, a motion by the five individual plaintiffs for substitution of Judith Vladeck, Esq., as counsel was granted, but, because trial was scheduled to begin a week later and new counsel would have had insufficient time to prepare, all plaintiffs except Suffolk County were severed from the action for the purposes of participating in the impending trial. After a two month jury trial, Suffolk County prevailed in various of its RICO claims against LILCO and one of its former officers. The jury awarded damages which, when trebled as required under the RICO statute, totaled some $22.9 million.

Suffolk's claims have now been dismissed on the ground that RICO does not apply to a case such as this one seeking, in effect, retroactive rate decreases. *See* 710 F.Supp. 1387 (E.D.N.Y.1989).

The five individual plaintiffs severed from the trial now seek leave to file an amended complaint joining three additional individuals as named plaintiffs. At this time they also renew their motion for certification of the class. Suffolk County also now renews its motion for class certification and seeks to have itself appointed as class representative. Custom Extruders, Inc., a plaintiff in the original action whose claims were severed from those of Suffolk County when those of the individual plaintiffs were severed, moves for an order permitting further substitution of counsel and the filing of an amended complaint adding various "business ratepayers" as named plaintiffs. At the same time, these business ratepayers move to intervene in the action. Also seeking to intervene are Nassau County, the City of New York, the Long Island Association, the Shoreham–Wading River Central School District and the Grumman Corporation. Nassau County and a number

of the proposed intervenors ask to be designated as representatives of the class either alone or as part of a committee.

## II. AMENDMENT OF COMPLAINT

 Leave to amend the complaint should be freely granted where no prejudice to the defendants will result. Fed.R. Civ.P. 15(a). Certification of the class by this order, dismissal of Suffolk's claims on February 11 and the need for prompt resolution of this controversy to protect the need for electric power of millions of citizens served by LILCO, make an amendment further delaying the case undesirable and prejudicial to defendants. The motions for leave to file an amended complaint are denied except to permit Judith P. Vladeck, Esq., to add additional named plaintiffs.

## III. CLASS CERTIFICATION

The class is now certified under Rule 23(b)(1)(B) of the Federal Rules of Civil Procedure. The class is defined as follows:

All persons who were ratepayers of the Long Island Lighting Company at any time during the period January 1, 1974, through the present and also those who are or will be ratepayers of the Long Island Lighting Company.

The court appoints Judith P. Vladeck, Esq., of Vladeck, Waldman, Elias & Engelhard, the attorney selected by the various individual plaintiffs, as attorney for the class. She is an experienced attorney of national reputation and unquestioned probity and skill. Her law firm is of excellent quality, well able, by professional capacity and economic power, to protect the rights of the class. Moreover, since she is not a resident of Long Island and has not participated in the Shoreham controversy, she will be able to exercise her fiduciary powers impartially in a way that can benefit all who may be affected by this suit.

Suffolk County's motion to represent the class is denied. The County will be afforded the opportunity to opt out of the class if it so desires. Its phase of the case has already been tried and it is entitled to appeal on its own behalf, having expended many millions of dollars on the case.

The court, as noted below, is granting the motions to intervene of all parties who seek to intervene in the action. None of them can be designated as class representatives. Each is a latecomer. Each has special interests and views that may be antithetical to those of the class of ratepayers and former ratepayers as a whole. There is no reason to believe that Ms. Vladeck will be appreciably assisted were they to be appointed to a committee with her. Their presence will only add to the expense of the proceedings and slow them down. The participation of these parties will be limited to the representation of their own individual interests.

### A. *Prerequisites of Class Action Under Rule 23(a)*

The prerequisites of a class action suit in federal court pursuant to Rule 23(a) of the Federal Rules of Civil Procedure are: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." In addition, the action must satisfy the requirements of one of the subdivisions of Rule 23(b).

There can be little doubt that the first three prerequisites of Rule 23(a) are satisfied. The class, including former ratepayers, contains well over one million members. All of their claims rest on the theory that the defendants lied to the PSC and thereby caused injury to ratepayers in the form of improperly obtained rate increases. Thus the first two requirements are met. The individual plaintiffs are present and former ratepayers who have been customers of LILCO for varying lengths of time, and thus their claims are typical of those of the class and the third prerequisite is satisfied.

 The final prerequisite of Rule 23(a) is that the proposed named representatives

will fairly and adequately protect the interests of the class. As generally interpreted, this requires that: (1) the named plaintiffs not have "interests antagonistic to those of the remainder of the class," and (2) the attorney for the plaintiffs be "qualified, experienced, and generally able to conduct the proposed litigation." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968); *see also,* 1 Newberg on Class Actions, § 3.22, (2d ed. 1985). The underlying concern is to ensure that the class's claims will be vigorously prosecuted by the class representatives. 7A Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1766 (1988). The question of whether the named plaintiffs can fairly and adequately represent the class is one "committed to the sound discretion of the district court." *Malchman v. Davis,* 761 F.2d 893, 899 (2d Cir.1985) (citing cases).

The defendants argue that the individual plaintiffs cannot serve as adequate class representatives because they have insufficient financial resources to bear the costs and expenses of the litigation, they are unduly antagonistic to the defendants, they are ignorant of the action and lack credibility, and they have interests opposed to the interests of the class. None of these arguments provides a sufficient basis to deny class certification.

### 1. Financial Resources of Class Representatives.

■ The individual ratepayer plaintiffs have demonstrated a willingness to assume ultimate responsibility for the costs of this litigation. In such circumstances it is generally recognized that named plaintiffs may qualify as adequate class representatives. *Genden v. Merrill, Lynch, Pierce, Fenner and Smith,* 114 F.R.D. 48, 53 (S.D.N.Y. 1987); *Moll v. U.S. Life Title Ins. Co.,* 113 F.R.D. 625, 632 (S.D.N.Y.1987); *Gordon v. Hunt,* 98 F.R.D. 573, 579 (S.D.N.Y.1980); *Kamens v. Horizon Corp.,* 81 F.R.D. 444, 446 (S.D.N.Y.1979).

■ That the litigation costs will probably exceed the present abilities of the ratepayer plaintiffs to pay does not render them inadequate as class representatives.

*Cf. Norris v. Colonial Commercial Corp.,* 77 F.R.D. 672, 673 (W.D.Oh.1977). They have recognized their ultimate responsibility for the costs, and other sources such as contributions from fellow class members may well be available to them.

### 2. Ethical–Financial Issues for Attorneys.

■ There is no indication that the attorneys for the ratepayer plaintiffs have agreed not to hold their clients responsible for the costs that are being advanced. Thus there is no conflict with DR5–103(B) of the Code of Professional Responsibility, applicable to New York lawyers, which permits an attorney to advance litigation costs provided "the client remains ultimately liable."

We recognize that, were the suit unsuccessful and no fund recovered, it would be most unusual for the attorney for a class to seek to recover legal fees and expenses from a few, relatively poor, named class representatives. This is the reality of class litigation. It should not be ignored by the courts.

■ A federal court is not bound to enforce New York's view of what constitutes ethical professional conduct. *See, e.g., Figueroa–Olmo v. Westinghouse Elec. Corp.,* 616 F.Supp. 1445, 1449–50 (D.P.R. 1985) (declining to apply Puerto Rico's Canons of Ethics governing attorney conduct); *Black v. Missouri,* 492 F.Supp. 848, 874–75 (W.D.MO.1980) (rejecting state bar association's interpretation of attorney ethics rule). The ethical standards imposed upon attorneys in federal court are a matter of federal law. *In re Snyder,* 472 U.S. 634, 643–45 & n. 6, 105 S.Ct. 2874, 2880–81 & n. 6, 86 L.Ed.2d 504 (1985). Moreover, this is a federal question case—RICO. Thus any argument that New York's rule should be applied by the court under the doctrine of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is inapposite. *Cf. Cord v. Smith,* 338 F.2d 516, 524 (9th Cir.1964), *clarified,* 370 F.2d 418 (9th Cir.1966) (even in diversity action where state's substantive law controls, rule of *Erie* does not require adherence to state

law standards of attorney conduct). Nor may state law control a federal court's interpretation and application of Rule 23, a Federal Rule of Civil Procedure.

Rule 23 requires, as a practical matter, that attorneys advance costs on a scale not reimbursable by any normal client. A federal court cannot allow outmoded and unrealistic concepts of ethics to inhibit it unduly in providing an effective forum to those persons of limited means who seek vindication of federal rights. As the court stated in *Sayre v. Abraham Lincoln Federal Savings & Loan Ass'n,* 65 F.R.D. 379, 385 (E.D.Pa.1974):

> [T]o deny a class whenever plaintiff's counsel advances significant funds to plaintiffs of little or modest means would be to defeat the very purposes which class actions were designed to achieve.... [W]e cannot condone a policy which would effectively limit class action plaintiffs to corporations, municipalities, or the rich.

*See also, e.g., In re "Agent Orange" Prod. Liab. Litig.,* 611 F.Supp. 1452 (E.D.N.Y. 1985), *aff'd and modified in part,* 818 F.2d 216 (2d Cir.1987), *cert. denied sub nom. Schwartz v. Dean,* —— U.S. ——, 108 S.Ct. 289, 98 L.Ed.2d 249 (1987); Johnson, Ethical Limitations on Creative Financing of Mass Tort Class Actions, 54 Brooklyn L.Rev. 539 (1988); Coffee, Jr., The Regulation of Entreprenurial Litigation: Balancing Fairness and Efficiency in the Large Class Action, 54 U.Chi.L.Rev. 877 (1987); Lynch, Ethical Rules in Flux: Advancing Costs of Litigation, 7 Litigation 19 (1981); J. Solovy, P.L. Refo and R.L. Raftery, Class Action Controversies, 241, 277 ff, Advancement of Litigation Costs, in ALI–ABA Civil Practice and Litigation (S. Schreiber ed. 1988); Underwood, Legal Ethics and Class Actions: Problems, Tactics and Judicial Responses, 71 Ky.L.Rev. 787 (1983).

The American Bar Association standards permit the advance of legal expenses on a contingent basis without reimbursement agreements. ABA Model Rules of Professional Conduct Rule 1.8(e) provides:

> A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that: (1) A lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter....

The Model Rules have been relied upon as providing an appropriate standard of ethical conduct for attorneys in federal court. *See, e.g., Figueroa–Olmo v. Westinghouse Elec. Corp.,* 616 F.Supp. 1445, 1450 (D.P.R. 1985) (ABA Model Rules of Professional Conduct adopted by United States District Court for the District of Puerto Rico); *cf. Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 995–96, 89 L.Ed.2d 123 (1986) (invoking Model Rules of Professional Conduct, Rules 1.2 and 3.3 and Comment to Rule 3.3, in discussion of attorney's duty upon learning of client's intent to commit perjury). In the circumstances of the present case, this court prefers to rely upon the ABA's Model Rule of Professional Conduct 1.8(e) as defining the proper standard of conduct for lawyers appearing before it rather than New York's Code of Professional Responsibility DR5–103(B).

3. Supremacy of Federal Rule of Ethics.

■ New York could, of course, attempt to enforce its ethical rule DR5–103(B) by initiating a disciplinary proceeding against a New York lawyer who violated the rule in federal court, even though the federal court had approved this departure from the state rule. Such an attempt by the state, however, would be barred by the Supremacy Clause of the United States Constitution. U.S. Const. art. VI, cl. 2.

■ Under the Supremacy Clause, state laws that are "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" are invalid. *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). State rules regulating attorney conduct are subject to operation of the Supremacy Clause. *See, e.g., Supreme Court of Virginia v. Friedman,* —— U.S. ——, 108 S.Ct. 2260, 101 L.Ed.2d 56 (1988) (striking down discriminatory admission requirements for non-residents); *Goldfarb v. Virginia State*

*Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) (invalidating minimum fee schedules); *Sperry v. Florida,* 373 U.S. 379, 83 S.Ct. 1322, 10 L.Ed.2d 428 (1963) (invalidating restraint on practice of patent law by non-lawyers). Thus, to the extent the enforcement of a state ethics rule might frustrate congressional ends, the Supremacy Clause would be a bar to any such enforcement.

A fundamental goal of the federal class action rule—approved by the Supreme Court and not objected to by Congress—is to promote access to the legal system "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages." *Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 1174, 63 L.Ed. 2d 427 (1980). It can be assumed that if a state attempted to discipline attorneys for entering into contingent fee arrangements—explicit or de facto—with clients suing on federal rights in class action suits in federal courts, few of that state's attorneys would be willing to represent clients who could not bear the often enormous costs of class litigation. Without doubt this would interfere with the national policies that underlie the federal class action device as well as the vindication of the specific federal rights in question. Enforcement of such a rule in these circumstances would be prohibited by the Supremacy Clause. *See, e.g., NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (striking down as a violation of the First and Fourteenth Amendments a state ethics rule that proscribed any arrangement by which prospective litigants were advised that their legal rights might have been infringed and to seek the assistance of particular attorneys).

Even though the court declines to follow New York's ethics rule in this case, the court must exercise considerable discretion and control to ensure against abuse of the class action device by attorneys motivated only by their own desire for profits. There is no such danger here. The controversy is a real one with deep significance to the named plaintiffs and members of the class.

The attorney designated to represent the class is a highly ethical and respected lawyer whose extensive practice has been based on representation of individual plaintiffs and groups seeking to enforce rights in such areas as labor and civil rights.

■ No ethical dangers are presented that the vigilant court cannot guard against. The court is satisfied that sufficient resources are available to the class representatives to insure that the case will be vigorously prosecuted. There is nothing unethical about the attorneys advancing the costs of litigation even though their clients can never pay unless the action is successful.

4. Antagonism of Class Representatives.

The contention that the ratepayer plaintiffs are unduly antagonistic toward the defendants and therefore inadequate class representatives is not persuasive. Occasionally antagonism toward the defendant by a plaintiff seeking representative status is so great as to render doubtful the plaintiff's ability to serve in a fiduciary capacity for the class. *See Kamerman v. Ockap Corp.,* 112 F.R.D. 195, 197 (S.D.N.Y.1986) (father, on his deathbed, exacted oath from his sons that litigation would be continued). But even in those cases in which the plaintiff's antagonism was a factor in the denial of certification, other factors figured in the decision. *See, e.g., Kamerman,* 112 F.R.D. at 197 (plaintiff subject to unique defenses); *Sheehan v. Purolator, Inc.,* 103 F.R. D. 641, 652 (E.D.N.Y.1984), *aff'd* 839 F.2d 99 (2d Cir.1988) (absence of common questions of law or fact); *Kamean v. Local 363, International Brotherhood of Teamsters,* 109 F.R.D. 391, 396 (S.D.N.Y.1986) (litigation financed by third party); *Norman v. Arcs Equities Corp.,* 72 F.R.D. 502, 504 (S.D.N.Y.1976) (same).

■ It is stating the obvious to say that litigation is often born of ill will, and this is no less true in class actions. To expect these plaintiffs to be completely neutral when they allege that the defendants have defrauded them and others of billions of

dollars is to expect too much. Here there is nothing to suggest that whatever antagonism the ratepayer plaintiffs might bear towards the defendants will interfere with their duty to fairly and adequately represent the interests of the class. In any event, the attorney designated to represent the class has an obligation to the entire class that transcends her obligations to her individual clients.

5. Lack of Knowledge of Class Representatives.

■ Similarly unpersuasive are the defendants' arguments that the ratepayer plaintiffs are unsuitable class representatives because they lack credibility and are ignorant of the specifics of the action. In complex actions such as this one, named plaintiffs are not required to "have expert knowledge of all the details of the case, ... and a great deal of reliance on the expertise of counsel is to be expected." *In re AM International, Inc. Securities Litig.*, 108 F.R.D. 190, 197 (S.D.N.Y.1985) (citing cases). *See also Goodman v. Lukens Steel Co.*, 777 F.2d 113, 124 (3rd Cir.1985), *aff'd* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed. 2d 572 (1987); *Snider v. Upjohn Co.*, 115 F.R.D. 536, 541 (E.D.Pa.1987); *Pellman v. Cinerama, Inc.*, 89 F.R.D. 386, 390 (S.D.N.Y.1981). The Supreme Court has indicated that, in the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's ignorance or credibility are rarely appropriate. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370–74, 86 S.Ct. 845, 849–51, 15 L.Ed.2d 807 (1966).

Plaintiffs here are sufficiently familiar with the essential facts of this case to serve as class representatives. Defendants have not demonstrated that the ratepayer plaintiffs have given the sort of false, misleading or contradictory testimony with regard to the basic issues of the case that might make their claims subject to unique defenses and thereby undermine their ability to adequately represent the class. *Compare, e.g., Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir.1983) (denial of certification due to plaintiffs' lack of credibility was not an abuse of discretion where "plaintiffs' testimony on an issue critical to one of their two causes of action was subject to sharp attack"); *Panzirer v. Wolf*, 663 F.2d 365, 368 (2d Cir.1981), *vacated as moot sub nom. Price Waterhouse v. Panzirer*, 459 U.S. 1027, 103 S.Ct. 434, 74 L.Ed.2d 594 (1982) (denial of certification proper where plaintiff gave four different versions of conversation with her broker regarding circumstances surrounding stock purchase); *Darvin v. International Harvester Co.*, 610 F.Supp. 255, 257 (S.D.N.Y.1985) (denying certification because inconsistencies in plaintiff's testimony could become "focus of cross-examination and unique defenses at trial, to the detriment of the class").

6. Political Motivations of Class Representatives.

■ Finally the defendants argue that the ratepayer plaintiffs cannot fairly and adequately represent the class because the ratepayer plaintiffs have political motivations that conflict with the predominantly economic interests of the class and because conflicts may develop within the class itself. The court is unconvinced that there are any conflicts here sufficient to support a denial of class certification.

There is no doubt that "apparent or potential conflicts of interest between a plaintiff and the class he seeks to represent" must be considered in the certification inquiry. *Stull v. Baker*, 410 F.Supp. 1326, 1337 (S.D.N.Y.1976). But the fact that various of the ratepayer plaintiffs may oppose the commercial operation of the Shoreham plant, favor the takeover of LILCO by a public authority or take any other positions with regard to LILCO and the other defendants is not by itself an indication that the economic interests of the class will or might be sacrificed in order to realize purely political objectives. For certification to be denied on this basis there must be a "real probabilit[y]" that potential conflicts exist. *Robertson v. National Basketball Ass'n*, 389 F.Supp. 867, 899 (S.D.N.Y.1975). Such an unresolvable conflict does not exist in this case. Absent are the type of considerations that make Suffolk County an inappropriate class representative in this re-

gard—namely, the County's continuing participation as an opponent of LILCO in Shoreham-related proceedings before various administrative bodies, its opposition to LILCO in several currently pending lawsuits, and its other significant pecuniary and non-pecuniary interests. In contrast, the simple fact that the ratepayer plaintiffs possess opinions with respect to the operation of Shoreham, the need for a public power authority or on similar related issues is an insufficient basis upon which to conclude that the ratepayer plaintiffs cannot fairly and adequately represent the class.

### 7. Intra-Class Conflicts.

 Similarly, the possibility of intra-class conflicts does not warrant a denial of certification. The court has considerable discretion to create subclasses in order to manage intra-class conflicts if and when they should arise. Fed.R.Civ.Proc. 23(c)(4)(B); Manual for Complex Litigation 2d, § 30.16. Potential conflicts between past and present ratepayers and long term and recent ratepayers will arise, if at all, at the damages stage or fairness hearing stage of this litigation. At that time, if necessary, the court may order the formation of subclasses to protect the interests of class members. Fed.R.Civ.P. 23(c)(4), advisory committee notes, 39 F.R.D. 69, 106 (1966); *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 566 (2d Cir.1968); *In re "Agent Orange" Prod. Liab.,* 100 F.R.D. 718, 724 (E.D.N.Y.1983), *mandamus denied sub nom. In re Diamond Shamrock Chem. Co.,* 725 F.2d 858, *cert. denied,* 465 U.S. 1067, 104 S.Ct. 1417, 79 L.Ed.2d 743 (1984); *Sol S. Turnoff Drug Distributors, Inc. v. N.V. Nederlandsche Combinatie Voor Chemische Industrie, et al.,* 51 F.R.D. 227, 233 (E.D.Pa.1970). The fact that conflicts among class members may arise at the settlement or damages stage of the litigation does not require that class certification be denied. *Blackie v. Barrack,* 524 F.2d 891, 909 (9th Cir.1975), *cert. denied* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

Nor must certification be denied if the interests of some class members, such as those who are also shareholders of LILCO, may actually be harmed should the class prevail on its claims. *Eliasen v. Green Bay & Western R.R.,* 93 F.R.D. 408, 411 (E.D.Wis.1982). To the extent that the interests of class members who are also shareholders of LILCO may irrevocably conflict with the interests of the class in general, the court may exclude them from the class at a later time or create a subclass of such ratepayer-owners and if necessary realign the parties. *See Carr v. Conoco Plastics, Inc.,* 423 F.2d 57, 58 (5th Cir.1970), *cert. denied,* 400 U.S. 951, 91 S.Ct. 241, 27 L.Ed.2d 257 (1970).

Ratepayer plaintiffs have no "interests antagonistic to those of the remainder of the class" sufficient to deny certification of the class. Their attorney, Judith P. Vladeck, is, as already noted, qualified, experienced, and generally able to conduct the proposed litigation. The court is assured that the ratepayer plaintiffs and their attorney will vigorously prosecute this action on behalf of the class and can fairly and adequately protect the interests of the class. Accordingly the last of the requirements of Rule 23(a) is met.

### B. *Prerequisites of Class Action Under Rule 23(b)(1)(B)*

 In order to be maintained as a class action, an action must also satisfy the conditions of one of the subdivisions of Fed.R.Civ.P. 23(b). This action meets the requirements of Rule 23(b)(1)(B).

Rule 23(b)(1)(B) permits certification of a class when "adjudications with respect to individual members of the class ... would as a practical matter ... substantially impair or impede their ability to protect their interests." The drafters of Rule 23(b)(1)(B) intended the rule to apply "when claims are made by numerous persons against a fund insufficient to satisfy all claims." Rule 23(b)(1)(B) advisory committee notes, 39 F.R.D. 69, 101 (1966). *See also,* A. Miller, An Overview of Federal Class Actions: Past, Present and Future, at 45 (1977).

 Mere allegations that the fund is insufficient are not enough to support certification of a class under Rule 23(b)(1)(B).

The plaintiffs must offer evidence of the likely insolvency of the defendants should plaintiffs prevail in their claims and that there is a substantial probability of success in the suit. *In re "Agent Orange" Prod. Liab. Litig.*, 506 F.Supp. 762, 789–90 (E.D. N.Y.1980). See also *In re Northern District of Calif., Dalkon Shield IUD Prod. Liab. Litig.*, 693 F.2d 847, 852 (9th Cir. 1982).

In the present action counsel for the proposed class has demonstrated that the potential liability to the class is some $3.4 billion which, when trebled as is required under the RICO statute, would result in a total liability to the class of $10.2 billion. This figure is predicated upon the possibility that the class may demonstrate that all of the allegations in its complaint are true. Since the class was not a party to the recent trial at which plaintiff Suffolk County prevailed on only some of its claims, the class is not bound by findings adverse to Suffolk County in that proceeding. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 at n. 7, 99 S.Ct. 645, 649 at n. 7, 58 L.Ed.2d 552 (1979) (citing cases). LILCO, however, is bound by determinations adverse to it at that trial. *Id.* at 331–33, 99 S.Ct. at 651–53. The jury verdict against LILCO demonstrates that there is a substantial probability of success in this suit if there should be a reversal of this court's determination that RICO does not apply.

Should this court's dismissal of Suffolk's claims be reversed and the jury's verdict against LILCO sustained on appeal, LILCO will be forced into bankruptcy since its assets will not suffice to pay the judgment. Based upon documents admitted during the trial of the severed part of this action and necessarily relied upon by the jury in reaching its verdict as to damages for Suffolk County, an extrapolation from the jury's findings indicates the class's minimum recovery would be $4.31 billion. The total shareholders' equity in LILCO as of the third quarter of 1988 was $3.2 billion. It is apparent, therefore, that should the plaintiffs prevail, there is a high probability that not all possible RICO claimants could be paid in full.

The plaintiffs have met their burden of demonstrating a "substantial probability" that their claims, if sustained, exceed the defendant's assets. *In re "Agent Orange" Prod. Liab. Litig.*, 100 F.R.D. 718, 727 (E.D.N.Y.1983). Because it is unlikely that the defendant can pay the judgments which may result from this suit, making allocations among members of the prospective class necessary, this is an appropriate case for certification pursuant to Rule 23(b)(1)(B). *See In re Alexander Grant & Co. Litig.*, 110 F.R.D. 528 (S.D.Fla.1986); *see also Cass Clay, Inc. v. Northwest Pub. Serv. Co.*, 63 F.R.D. 34 (D.S.D.1974) (certifying under R. 23(b)(1)(B) a class of plaintiff ratepayers seeking refund of alleged utility overcharges).

██ The ratepayer plaintiffs seek certification in the alternative under Rule 23(b)(3). Where a particular class action could properly be certified under either Rule 23(b)(1)(B) or Rule 23(b)(3), certification should generally be granted pursuant to Rule 23(b)(1)(B). *Robertson v. Nat'l Basketball Ass'n*, 556 F.2d 682, 685 (2d Cir.1977); *see also Reynolds v. Nat'l Football League*, 584 F.2d 280, 284 (8th Cir. 1978). Having found that the requirements for certification under Rule 23(b)(1)(B) have been met, the court need not consider whether the class might be certified under Rule 23(b)(3). Certification of the class under Rule 23(b)(1)(B) is granted.

Under Rule 23(b)(1)(B) no provisions for opting out are required, nor is it necessary to give notice to individual class members prior to settlement unless the court so provides in its orders for the protection of the class members. *Payne v. Travenol Laboratories*, 673 F.2d 798, 812 (5th Cir.1982); *Larionoff v. United States*, 533 F.2d 1167, 1184–86 (D.C.Cir.1976); *Cranston v. Hardin*, 504 F.2d 566, 576 (2d Cir.1974); *U.S. Trust Co. v. Executive Life Ins. Co.*, 602 F.Supp. 930, 933 n. 3 (S.D.N.Y.1984).

### C. *Class Counsel*

██ The attorney for the class will be Judith P. Vladeck, Esq., of Vladeck, Waldman, Elias & Engelhard, who is the attor-

ney presently representing ratepayer plaintiffs. The fiduciary and other obligations of Ms. Vladeck in conducting the litigation are substantial. They are complicated by factors of which the court must take judicial notice. These include widespread local opposition to the opening of the Shoreham nuclear reactor, the federal interest in its safe operation, the state interest in stable and predictable electric rates on Long Island, and state and local interests in the viability of an institution to furnish electric power on Long Island. Nevertheless, the court has considerable confidence in Ms. Vladeck's judgment and legal capacity to surmount all the legal and other problems she will face.

It is particularly important that an independent representative of the class take charge of the litigation. To protect the interests of the class the court has the power to re-evaluate the adequacy of Ms. Vladeck's representation throughout the pendency of the action. Fed.R.Civ.P. 23(c)(1); *see Jordan v. County of Los Angeles*, 669 F.2d 1311, 1323 n. 13 (9th Cir. 1982). The court may replace her as counsel for the class. *See* Fed.R.Civ.P. 28(d)(3); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 186 (2d Cir.1987); *Cullen v. N.Y. State Civil Serv. Comm'n*, 435 F.Supp. 546, 563–64 (E.D.N.Y.), *appeal dismissed*, 566 F.2d 846, 848–49 (2d Cir.1977); *Percodani v. Riker–Maxson Corp.*, 51 F.R. D. 263 (S.D.N.Y.1970), *aff'd sub nom. Farber v. Riker–Maxson Corp.*, 442 F.2d 457 (2d Cir.1971).

D. *Suffolk County's Right to Opt Out of the Class*

▮▮▮ Suffolk County renews its motion to have itself designated as a representative of the class. This motion was previously denied. *See* 710 F.Supp. 1405 (E.D. N.Y.1988). Because the circumstances that led this court previously to deny representative status to the County remain unchanged, the County's motion must be denied once more.

It is true that Suffolk County has expended considerable resources in financing the litigation to date and was initially successful in the prosecution of some of the claims the class here brings. Nonetheless, there has been no change in the fact that the County has a distinct conflict of interest which places it in a position with interests possibly contrary to those of the class.

This conflict arises because of the County's long-standing opposition to LILCO's Shoreham and Jamestown nuclear power projects. As a result of its efforts to block the construction and opening of the plants, the County has become deeply enmeshed in a wide-ranging struggle with LILCO on a variety of fronts that make it a highly atypical and unrepresentative plaintiff. For example, since at least 1982 Suffolk County has intervened as an adverse party in various of Shoreham's licensing proceedings before the Nuclear Regulatory Commission. In December, 1982 the County sued the New York Disaster Preparedness Commission to prevent the Commission from reviewing the Shoreham emergency response plan, and subsequently the County enacted (but was enjoined from enforcing) a local law making it a criminal offense for LILCO employees to participate in tests of that response plan. *Long Island Lighting Co. v. County of Suffolk*, 628 F.Supp. 654 (E.D.N.Y.1986). Also in 1982, in a case that was removed to federal court and ultimately dismissed, the County sued LILCO for negligence, breach of warranty, breach of contract, misrepresentation and concealment, all arising out of the construction of Shoreham. *County of Suffolk v. Long Island Lighting Co.*, 554 F.Supp. 399 (E.D.N.Y.1983), *aff'd.*, 728 F.2d 52 (2d Cir.1984). The County was also an intervenor in hearings before the PSC to investigate the prudence of Shoreham construction costs, and since 1977 has been an adverse party to LILCO in various PSC rate proceedings.

The County is at present entangled with LILCO in other litigations as well. It is currently the defendant in a breach of contract action brought by LILCO in state court, where LILCO is seeking damages totaling some $24 million for the County's refusal to prepare an offsite emergency response plan for Shoreham. LILCO has also instituted tax certiorari proceedings

against the town of Brookhaven in Suffolk County in which it seeks a recovery of $400 to $500 million stemming from real property taxes that LILCO alleges were improperly assessed against it. Although the County is not the defendant in that action, its liability should LILCO prevail is said to be in the hundreds of millions of dollars.

Additionally, because of its prolonged political struggle with LILCO to block the opening of Shoreham, the County has enormous non-pecuniary interests in this litigation that may not be shared by the class as a whole. For the County, the present action is merely one foray in the larger struggle, and the decision to settle or pursue this suit will depend upon the tactical considerations that underlie that struggle. In contrast, the members of the class share predominantly financial interests in this action —although individually they may differ on matters such as the operation of Shoreham or issues of publicly operated power systems. While the potential recovery of Suffolk County should it obtain a reversal of the order dismissing its case, can be substantial—some $23 million plus attorneys' fees—this is a relatively minor amount compared with the total possible liabilities of LILCO in this litigation.

The totality of these circumstances would make it extremely difficult for Suffolk County to fairly and adequately protect the interests of the class. The court cannot permit the designation of a class representative so vulnerable to charges that the representative's interests conflict with those of the class. The motion of Suffolk County to serve as a representative of the class in this litigation must be denied.

 Nonetheless, the court recognizes that some special consideration is due Suffolk County. At great effort and expense, it has litigated the identical RICO claims now advanced by the class and has obtained a jury verdict in its favor against LILCO with respect to three of these claims. Even though its claims were then dismissed, it appears inappropriate to deny Suffolk County any representative role in the class's litigation of these claims while at the same time requiring it to remain as a member of this mandatory class. Therefore Suffolk County is permitted to opt out of the class, if it should so desire, and conduct its appeals or settlement negotiations independently of that of the class.

 The fact that this class action is certified pursuant to Fed.R.Civ.P. 23(b)(1)(B) and is thus a "mandatory" class does not prevent the court from permitting Suffolk County to opt out. Classes certified pursuant to Rule 23(b)(1) or Rule 23(b)(2) are said to be mandatory because class members can claim no right to opt out of these classes. Under Rule 23(d), however, courts have the discretionary power to allow the exclusion of class members in Rule 23(b)(1) and Rule 23(b)(2) class actions. 3 Newberg on Class Actions § 16.17 (2d ed.). *See Penson v. Terminal Transp. Co.,* 634 F.2d 989, 993 (5th Cir.1981) (upholding district court's grant of a limited right to opt out of a Rule 23(b)(2) class); *Bauman v. United States District Court,* 557 F.2d 650, 659–60 (9th Cir.1977) (same); *Allen v. Isaac,* 100 F.R.D. 373 (N.D.Ill. 1983) (permitting limited right to opt out of a Rule 23(b)(2) class); *Women's Committee for Equal Employment Opportunity v. National Broadcasting Co.,* 71 F.R.D. 666, 671 (S.D.N.Y.1976) (same); *Grogan v. American Brands,* 70 F.R.D. 579, 584 (M.D.N.C.1976) (same); *but see Plummer v. Chemical Bank,* 668 F.2d 654, 657 n. 2 (2d Cir.1982) (suggesting in dicta that opting out might be permissible only in Rule 23(b)(3) class actions, but not reversing the district court which had permitted class members to opt out of a Rule 23(b)(2) class). When a monetary recovery is a component of the relief sought by a Rule 23(b)(2) class, it has been held that an opportunity to opt out must be provided to class members. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1155 (11th Cir. 1983).

As the cases indicate, the discretionary power to grant a limited right to opt out of a mandatory class has been exercised in the context of Rule 23(b)(2) classes, most commonly when monetary damages are a component of the relief sought. Here Suf-

folk also satisfies two further necessary conditions. First, permitting this limited right to opt out could not jeopardize the class's ability to recover its settlement amount from the defendants should the class settle its claims with LILCO. Second, the situation of Suffolk and the procedural posture of its claims are distinguishable from the general class. At great expense Suffolk litigated its claims and obtained a jury verdict in its favor. Basic fairness to Suffolk justifies permitting it to opt out, potentially, therefore, obtaining full satisfaction of its claims while requiring the remaining members of the class to accept a possible recovery of only some portion of their claims. Nothing warrants permitting any other class member to opt out.

### E. *United States*

The United States in its qui tam action is suing LILCO on a theory related to, but different from, that of the ratepayer class. Its claim is based on the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* It is therefore not a member of the class and need not opt out. Since, however, the theory in its action is essentially the same as in the class action, it may, if it wishes, agree to any settlement of the class's claims. Whether or not it does so stipulate, fairness requires that it receive benefits on a pro rata basis, the same as any other of the ratepayers. It will be treated for purposes of the remedy as if it were a member of the class.

## IV. INTERVENTION

A number of parties seek intervention as of right pursuant to Federal Rule of Civil Procedure 24(a). In the alternative they seek the court's permission to intervene under Rules 24(b)(2) and 23(d)(2).

### A. *Intervention as of Right*

■ One of the requirements for intervention as of right is that the interests of the party seeking to intervene are not "adequately represented by existing parties." Fed.R.Civ.P. 24(a). The court has already concluded that the present ratepayer plaintiffs can fairly and adequately represent the interests of the class. The fact that

most of the class representatives are not residents of Nassau County, that the City of New York purchases electricity from LILCO under an individually negotiated contract, that Grumman is LILCO's largest commercial ratepayer, and that the class representatives are not businesses does not suggest that the interests of these intervenors will not be adequately represented by the class representatives. The common interest of all ratepayers in this RICO case is that the liability of LILCO and the other defendants be established. The court is satisfied that the class representatives are fully capable of vigorously pursuing this objective. The court therefore denies the intervenors' motions to intervene as of right under Rule 24(a).

### B. *Permissive Intervention*

Permissive intervention can be sought by the timely application of a party whose claim has a common question of law or fact with the claims being litigated in the main action. Fed.R.Civ.P. 24(b). Whether to permit such a party to intervene is a decision that lies within the discretion of the court. *Id.* The principal consideration is whether intervention will "unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* The court has the power to limit the roles of the intervenors or otherwise place conditions on their participation in the action. Fed.R.Civ. P. 23(d)(3).

■ Although the interests of the parties seeking intervention are adequately protected by the class representatives, the court recognizes that it is a legitimate desire to be represented by one's own counsel. Rule 23 acknowledges the interest of each party to speak for itself by its provisions governing appearance and intervention. Fed.R.Civ.P. 23(c)(2)(C) and 23(d)(2); *Ramsey v. Arata*, 406 F.Supp. 435, 442 (N.D.Tex.1975). The desire to ensure that one's interests are being protected are especially great where, as here, the class is a mandatory class that provides class members with no right to opt out. Moreover, some degree of participation by intervening class members can serve the interests of

the class at large. The intervening members may act as watchdogs to insure that the suit is being prosecuted by the class representatives in a responsible and thorough manner. In this role intervenors can bring to the court's attention any failure by the class representatives to discharge their fiduciary obligations to the class, and thereby assist the court in ensuring that the interests of the class are being fully protected.

Intervention in a limited role by all parties seeking to intervene should be permitted. Because their interests are already adequately protected by the present class representatives, it is unnecessary for these intervenors to serve the class in any formal representational capacity. They will, therefore, be entitled to no fee out of any fund obtained by the class members except to the extent that their work benefits the class as whole. *See In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1296 (E.D. N.Y.1985), *aff'd*, 818 F.2d 145 (2d Cir.1987).

Designation of any of the intervenors as representatives of the class might result in undue delay or prejudice to the parties. This action is extremely complex. Proof of the class's claims may depend on the presentation of highly technical documentary and testimonial evidence concerning the ratemaking procedures of the PSC, the construction of nuclear powered generating plants and similar matters. The individual ratepayer plaintiffs designated to represent the class instituted this suit almost two years ago. Counsel for the class has been involved in the action for almost five months and has closely followed the progress of the trial at which Suffolk County presented claims identical to those of the class.

The court has frequently expressed its opinion that because this suit has broad implications for the economic stability of Long Island it is vitally important that the action be promptly resolved. The possibility that there may be further delays while new class representatives become familiar with the complexities of the class's claims requires the court to limit the role of the intervenors. Additionally, in recent weeks the parties have been involved in intensive negotiations to settle the suit. The introduction of additional class representatives at this stage of the negotiations may impede the ability of the parties to reach a prompt settlement. This consideration alone can be proper grounds upon which to deny intervention. *See United States v. Louisiana*, 90 F.R.D. 365 (E.D.La.1981) (intervention denied where permitting intervention might inhibit complicated settlement negotiations).

## V. CONCLUSION

The motion of Judith P. Vlakeck on behalf of the individual named plaintiffs to file an amended complaint is granted. The class is certified. Motions to intervene on the terms stated are granted. Other motions are denied. No order need be submitted.

So ordered.