14 F.3d 151
 25 Bankr.Ct.Dec. 226, Bankr. L. Rep. P 75,669
 In re JOINT EASTERN AND SOUTHERN DISTRICT ASBESTOS LITIGATION.
In re JOHNS-MANVILLE CORPORATION, Debtor.
1,087 VIRGINIA ASBESTOS DISEASE JUDGMENT AND SETTLEMENT
CREDITORS OF the MANVILLE CORPORATION ASBESTOS DISEASE
COMPENSATION FUND (Manville Personal Injury Settlement
Trust), et al., Cimino, A Group of Approximately 2,236
Individuals, Appellants,
v.
MANVILLE PERSONAL INJURY SETTLEMENT TRUST, Appellee.
1,087 VIRGINIA ASBESTOS DISEASE JUDGMENT AND SETTLEMENT
CREDITORS OF the MANVILLE CORPORATION ASBESTOS DISEASE
COMPENSATION FUND (Manville Personal Injury Settlement
Trust), Cimino, A Group of Approximately 2,236 Individuals,
Majorie Ocasek Special Administrator of the Estate of Hugh
Wilson, 34 Tennessee Claimants, et al., Appellees,
v.
Paul L. SAFCHUCK, Napoleon Cathcart, and 650 Similarly
Situated Persons, and Inez B. Walters and 10,177
Similarly Situated Persons, Appellants,
Manville Personal Injury Settlement Trust, Leslie Gordon
Fagen, Legal Representative of Future Claimants, Appellees.
 Nos. 634, 635, 633, Docket 93-5064, 93-5066 and 93-5070.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 8, 1993.
Decided Jan. 11, 1994.
 
 Shepard A. Hoffman, Washington, DC, Connerton, Ray & Simon, for Cathcart & 650 Similarly Situated Persons.
 Richard F. Scruggs, Pascagoula, MS (Lawson F. Bernstein, New York City, on the brief), for Walters & 10,177 Similarly Situated Persons.
 Joel I. Klein, Washington, DC (Paul M. Smith, Klein, Farr, Smith & Taranto, Washington, DC, Michael E. Schoeman, Schoeman, Marsh & Updike, New York City, Robert R. Hatten, Patten, Wornom & Watkins, Newport News, VA, Richard S. Glasser, Glasser & Glasser, Norfolk, VA, on the brief), for Virginia Judgment Creditors.
 Murray Drabkin, Washington, DC (Hopkins & Sutter, Washington, DC, Alan Nisselson, Brauner Baron Rosenzweig & Klein, New York City, Greg Thompson, Provost & Umphrey, Wayne A. Reaud, Reaud, Morgan & Quinn, Beaumont, TX, on the brief), for Cimino Group.
 Michael Y. Rowland, Knoxville, TN, for 34 Tennessee Claimants.
 Kathy Byrne, Cooney & Conway, Chicago, IL, submitted a brief, for Ocasek.
 James L. Stengel, New York City (Donovan Leisure Newton & Irvine, on the brief), for Manville Personal Injury Settlement Trust.
 Leslie Gordon Fagen, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, on the brief), for Legal Representative of Future Claimants.
 Before: NEWMAN, Chief Judge, MINER and McLAUGHLIN, Circuit Judges.
 JON O. NEWMAN, Chief Judge:
 
 
 1
 This appeal primarily presents a challenge to the settlement of the claims of three groups of asbestos victims who have obtained final judgments or settlements against the Manville Personal Injury Settlement Trust ("the Trust"). The appeal is a further round in the protracted class action, see In re Joint Eastern and Southern District Asbestos Litigation, 982 F.2d 721 (2d Cir.1992), modified, In re Findley, 993 F.2d 7 (2d Cir.1993) ("Findley "), that was initiated in response to the financial difficulties encountered by the Trust, which had been established pursuant to the Chapter 11 proceeding of the Johns-Manville Corporation, see Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir.1988).
 
 
 2
 The principal appeal, No. 93-5070, is brought on behalf of two groups of asbestos victims, more particularly described below, who have claims against the Trust. These appellants (collectively "the Safchuck appellants") appeal from the July 22, 1992, orders jointly entered by the District Courts of the Eastern and Southern District of New York and the Bankruptcy Court of the Southern District of New York (Jack B. Weinstein, District Judge, and Burton R. Lifland, Chief Bankruptcy Judge) ("the Trial Courts"). The July 22 orders approved payment to three groups of asbestos victims (collectively "the VJC/C/EC claimants"), more particularly described below, of amounts that represent approximately a 25 percent discount from the judgments or settlements to which they would otherwise be entitled.
 
 
 3
 Also pending are appeals by two groups within the VJC/C/EC claimants, the Virginia Judgment Creditors in No. 93-5064 and the Cimino Plaintiffs in No. 93-5066, from the June 8, 1992, order of the Trial Courts staying enforcement of the judgments these appellants hold against the Trust, judgments that were compromised for payment by the July 22 orders challenged in No. 93-5070.
 
 
 4
 We affirm the orders of July 22 and dismiss as moot the appeal from the June 8 order.
 
 Background
 
 5
 The facts concerning the Manville Chapter 11 reorganization, the establishment of the Trust, and the filing of the pending class action, which seeks to restructure the Trust, have been detailed in our prior opinions and need only brief recapitulation here. The reorganization plan ("the Plan") and implementing orders of the Trial Courts established the Trust as the exclusive vehicle for paying asbestos health claims of present and future claimants alleging pre-petition exposure to Manville asbestos, channeled to the Trust substantial assets and a 20 percent share of future profits of the reorganized Manville Corporation, and required present and future health claimants to seek recovery only from the Trust. The number of present health claimants is approximately 170,000. The number of future health claimants is subject to widely varying estimates: the Trust now estimates 140,000 future claimants; reports cited by the Safchuck appellants indicate that, under some circumstances, the total could be between 400,000 and 450,000.
 
 
 6
 Included in the broad category of present health claimants are three groups of claimants whose prospect of receiving cash from the Trust has precipitated the pending appeal. The first group, known as the Virginia Judgment Claimants ("the VJC Claimants"), are 1,088 claimants from Virginia who sued the Trust in the District Courts for the Eastern or Western Districts of Virginia or in Virginia state courts. These claimants settled their claims against the Trust, resulting in judgments entered, in most instances, on June 8, 1990. Those separate judgments were then compromised by a November 16, 1990, settlement between the VJC Claimants as a group and the Trust. That settlement contemplated three scheduled payments in satisfaction of the underlying judgments. The total amount of the underlying judgments is $63,010,616.
 
 
 7
 The second group, known as the Cimino Plaintiffs, are 2,972 members of the plaintiff class in a class action filed in the District Court for the Eastern District of Texas, Cimino v. Raymark Industries, Inc., No. 86-B-456 (E.D.Tex.1986). The Cimino Plaintiffs settled their claims with the Trust, resulting in a judgment entered September 12, 1990.[1] This settlement contemplated six scheduled payments. The total amount of the Cimino Plaintiffs' judgment is $140,564,000.
 
 
 8
 The third group, known as the Eligible Claimants, are approximately 7,600 individuals whose claims against the Trust had been liquidated either by a settlement or a litigated judgment entered in whatever courts their suits were pending, provided that the settlement or judgment was entered prior to November 19, 1990, and, in the case of judgments, had become final and nonappealable as of July 22, 1993. The total amount of the settlements and judgments of the Eligible Claimants is approximately $279,000,000.
 
 
 9
 Thus, as of November 19, 1990, the three groups--the VJC/C/EC claimants--held settlements or judgments entitling them to be paid by the Trust an aggregate amount of nearly half-a-billion dollars.
 
 
 10
 In the face of what appeared to be the insolvency of the Trust, Judge Weinstein issued an order on July 9, 1990, which included a partial stay of payments by the Trust, including, with some exceptions, payments due with respect to settlements and judgments. Shortly thereafter, the Trust beneficiaries and the Trust participated in negotiations aimed at restructuring the Trust. These negotiations resulted in an agreement that was expected to be consummated by the filing and prompt settlement of a class action brought by the Trust beneficiaries. That class action was filed on November 19, 1990, a date that has significance for the issues raised in the pending appeal. Simultaneously, there was filed a proposed stipulation of settlement of the class action. The proposed settlement ("the Restructuring Settlement") modified the previous arrangements concerning the liquidation and payment of unliquidated claims. As to liquidated claims, which were defined as claims that had been reduced to judgments or settlements prior to November 19, 1990, the Restructuring Settlement provided that all would be paid according to their terms.
 
 
 11
 The Trial Courts approved the Restructuring Settlement in June of 1991. An appeal was taken by some health claimants and by other parties who had objected to the Restructuring Settlement. The Safchuck appellants had not objected to the Restructuring Settlement and did not appeal from the judgment approving it. On that appeal, we ruled that the class action had not been validly settled because required subclasses had not been designated and had not given consents. Findley, 982 F.2d at 739-45. We therefore vacated the judgment approving the Restructuring Settlement and remanded for further proceedings in the class action. Id. at 751.
 
 
 12
 After our remand, the Trial Courts entered an order on June 8, 1993, continuing the prior stay of payments. That order is the subject of the appeals in Nos. 93-5064 and 93-5066 brought by the VJC Claimants and the Cimino Plaintiffs. With payment of their judgments enjoined, the VJC Claimants and the Cimino Plaintiffs negotiated with the Trust and with other parties to the class action. That negotiation resulted in further settlements, referred to by the parties as the "Modification Agreements," which are the subject of the appeal in 93-5070 by the Safchuck appellants.
 
 
 13
 The Modification Agreements provide for the immediate payment by the Trust of approximately 75 percent of the judgments and settlements entered into by the VJC Claimants and the Cimino Plaintiffs prior to November 19, 1990.[2] The Trust has agreed to offer the same option of immediate payment of a reduced amount to the Eligible Claimants, those health claimants who either settled with the Trust prior to November 19, 1990, or obtained judgments against the Trust prior to November 19, 1990, and whose judgments became final and non-appealable as of July 22, 1993 (the date the Trial Courts approved the offer to the Eligible claimants). The Trial Courts approved the Modification Agreements and the offer to Eligible Claimants and modified the stay of payments to permit compliance. The Trial Courts' order provides that the VJC Claimants and the Cimino Plaintiffs will be "deem[ed] ... to have opted out of the class action," Order of July 22, 1993, p 18, "[w]ithout determining whether or not [they] were originally or are members of the plaintiffs class." Id. The effect of the Modification Agreements is to reduce the judgments and settlements of the VJC Claimants by $14 million and those of the Cimino Plaintiffs by $35 million; if all of the Eligible Claimants accept the Trust's offer for payment on comparable terms, the reduction in their judgments and settlements would be $88 million. The total reduction is thus $137 million.
 
 
 14
 The Safchuck appellants appealed the Trial Courts' orders approving the Modification Agreements and the offer to Eligible Claimants, and obtained a stay of those orders from this Court. The Safchuck appellants are all asbestos health claimants and beneficiaries of the Trust. Paul L. Safchuck, the national president of the White Lung Association, appears pro se; Napoleon S. Cathcart and 615 similarly situated persons are represented by Connerton, Ray & Simon; and Inez B. Walters, personal representative of the heirs of Thompson F. Walters (deceased), and 10,177 others similarly situated are represented by Richard F. Scruggs. The Safchuck appellants' appeal is opposed by the VJC Claimants, the Cimino Plaintiffs, Marjorie Ocasek and 34 Tennessee Claimants (who are among the Eligible Claimants), the Trust, and the Legal Representative of Future Claimants.
 
 Discussion
 
 15
 The opposing sides on the appeal in No. 93-5070 view the controversy in markedly different terms. The Safchuck appellants assert that the effect of the Trial Courts' orders is to enable the 11,660 VJC-C-EC claimants to collect on their claims to the extent of 77 cents on the dollar, for a total of $350 million, leaving for the remaining 150,000 other present health claimants a depleted Trust that will be able to pay their claims only to the extent of 9 cents on the dollar, a result the Safchuck appellants characterize as "ludicrous." Brief for Safchuck Appellants at 3. The appellees respond that the orders permit payment to the VJC Claimants, the Cimino Plaintiffs, and the Eligible Claimants who accept the Trust's offer far less than the 100 cents on the dollar to which they are entitled by virtue of their judgments and settlements, leaving for all the other health claimants, most of whom have unliquidated claims, a Trust that will have $135 million more in assets than it would have if 100 percent payments were made.
 
 
 16
 The issue for us, as with all the appeals throughout the course of the Manville litigation, is not whether the result achieved by the Trial Courts is desirable or undesirable from the perspective of the various parties, but whether it denies any legally protectable rights of any of the parties. The Safchuck appellants have totally failed to identify any legally enforceable right they have to prevent the VJC/C/EC claimants from giving up a substantial portion (whether 25 or 23 percent) of their judgments and settlements as the price of securing a partial lifting of the stay that has prevented them from being paid. Though the Trial Courts may have acted within their discretion in entering and extending the payment stay, a matter we need not decide, the Safchuck appellants had no right to insist that a stay issue. Had the stay not issued, the VJC/C/EC claimants would have been entitled to present their judgments and settlements for payment and be paid in full. The Safchuck appellants cannot complain that the VJC/C/EC claimants were delayed three and one-half years in obtaining payment and then agreed to accept reduced payments.
 
 
 17
 Nor can the Safchuck appellants complain because of the prospect that those with liquidated claims will be paid a greater share of their claims than those with unliquidated claims. A claimant who obtains a judgment normally stands a better chance of collecting on a claim than a person who has yet to have a claim liquidated.
 
 
 18
 There is at least surface plausibility to the objection of the Safchuck appellants that the VJC/C/EC claimants will receive a greater share of their claims than some of the remaining health claimants who also have judgments. The appellees assert that none of the Safchuck appellants hold judgments. The appellees defend the preference for the VJC/C/EC claimants on the ground that the Restructuring Settlement established the November 19, 1990, date as the dividing line: those who obtained judgments or settlements before that date were to be paid in full; those whose claims did not become liquidated until after that date would be relegated to whatever payments were available pursuant to the Trust's restructured payment procedures. The difficulty with this line of defense is that the Restructuring Settlement no longer exists; it was vacated by our judgment in Findley, and the class action to restructure the Trust has neither been tried nor settled. The action remains pending. So the fact that a November 19, 1990, date was proposed as a date for identifying those judgments that would be paid in full (or now, 75 percent) is not a basis for rejecting the objection of the Safchuck appellants.
 
 
 19
 However, their objection fails for the fundamental reason that they have no protectable interest in preventing the payment of judgments held by any group of health claimants who are being paid in accordance with provisions of the Plan. Though the practical effect of the payments to the VJC/C/EC claimants may be to reduce the funds ultimately available to pay the claims of the Safchuck appellants, the VJC/C/EC claimants are being paid because they have secured judgments from other courts, and because their right to have the Trust pay their judgments and settlements has been established by the confirmed reorganization plan. See Findley, 993 F.2d at 9. Until such time as the payment arrangements established by that Plan are modified (whether by court ruling, settlement, or in connection with bankruptcy proceedings of the Trust itself), those with payment rights under the Plan are not impairing any protectable rights of other health claimants by receiving payments according to the Plan. Since payment to the VJC/C/EC claimants of their judgments and settlements in full as authorized by the Plan impairs no protectable rights of the Safchuck appellants, it follows that there is no impairment of their rights by payment of reduced amounts.
 
 
 20
 Those Safchuck appellants with judgments entered after November 19, 1990, are free to litigate, not the payment to the pre-November 19, 1990, judgment holders, but the lack of payment to the post-November 19, 1990, judgment holders, if there are any within their ranks. Whether they can prevail in forcing payment of their judgments is not the issue now before us. We decide only that they have no basis for preventing payment, on a reduced basis, to the VJC/C/EC claimants.
 
 
 21
 Unable to articulate a substantive objection to the payments to the VJC/C/EC claimants, the Safchuck appellants advance procedural objections. First, they broadly contend that the payment orders are invalid because they have been entered in what purports to be a class action but is in reality a bankruptcy proceeding that is being conducted without observing the protections of the Bankruptcy Code. In Findley we expressed serious concern about the use of a class action against an insolvent entity "to adjust the claims of creditors vis-a-vis each other, without observing the protections that would be available under bankruptcy law." 982 F.2d at 736. But the order challenged on this appeal does not adjudicate that any of the Safchuck appellants must accept less than the amounts of their unliquidated claims or any judgments they may have.
 
 
 22
 The concern we expressed in Findley is not relevant here because, unlike the situation we faced at that stage of the litigation, no order of the Trial Courts has been grounded on consent obtained by those lacking the authority to consent. Consent to the reduced payment order has been given only by the VJC claimants, the Cimino plaintiffs, and those of the Eligible Claimants who elect to accept the Trust's offer. Though they are to receive reduced payments, none of them is objecting.
 
 
 23
 Second, the Safchuck appellants complain that it was improper to deem the VJC/C/EC claimants to have opted out of the plaintiff class. The appellees defend the opt out as within the discretion of the Trial Courts. See County of Suffolk v. Long Island Lighting Co., 710 F.Supp. 1407 (E.D.N.Y.1989), aff'd, 907 F.2d 1295, 1302-05 (2d Cir.1990) ("LILCO "). The opt out here is quite different from what occurred in LILCO. The plaintiff class in that litigation came to court to establish their right to collect damages from the defendant; one class member, Suffolk County, was permitted to opt out after its claim was severed for a separate trial and adjudicated. LILCO, 907 F.2d at 1300-01. In the pending litigation, the class has come to court seeking to accomplish a restructuring of the Trust. The "opt out" by the VJC/C/EC claimants is in no sense the making of a separate peace with respect to such restructuring. The rights asserted by the VJC/C/EC claimants involve no restructuring of the Trust, but are wholly dependent on their preexisting rights grounded on their underlying judgments and settlements and on the payment requirements of the Plan. It may well be, as the VJC/C/EC claimants contend, that they should never have been included within the class in the first place. Cf. Piambino v. Bailey, 610 F.2d 1306, 1329 (5th Cir.) (questioning whether judgment creditors should have been included in plaintiff class), cert. denied, 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980). We need not decide that question in order to rule that permitting them to opt out, so that they may assert rights fully in existence prior to the filing of the class action was not beyond the discretion of the Trial Courts.
 
 
 24
 Finally, the Safchuck appellants complain that their interests were not adequately represented in the proceedings that led up to the challenged order. The claim encounters the basic objection that no protectable interest of the Safchuck appellants was adjusted by any ruling now challenged. Moreover, counsel for the Safchuck appellants were fully heard in opposition to the proposed Modification Agreements at the July 20, 1993, hearing, and the Legal Representative for Future Claimants, whose interests are substantially aligned with those of the Safchuck appellants,[3] has participated throughout the proceedings in support of the Modification Agreements. Finally, it should be noted that the Safchuck appellants voiced no objection, either in the Trial Courts or on the appeal in Findley, to the provisions of the Restructuring Settlement that recognized the right of pre-November 19, 1990, judgment holders to full payment.
 
 
 25
 In No. 93-5070, the July 22, 1993, orders of the Trial Courts are affirmed. As the VJC/C/EC claimants have acknowledged, upon affirmance in No. 93-5070, the appeals in Nos. 93-5064 and 93-5066 become moot, and these appeals are therefore dismissed. No costs. The mandate shall issue forthwith.
 
 
 
 [1]
 The July 22 order of the Trial Courts recites that this judgment was entered "nunc pro tunc July 15, 1990." We express no view as to the precise operative date of the judgment since, for purposes of this appeal, the only relevant fact is that the judgment was entered prior to November 19, 1990
 
 
 [2]
 The formula for the percentage reduction is uniform for all claimants within the categories of VJC Claimants, Cimino Plaintiffs, and Eligible Claimants, but its application results in slight variations depending on the schedule of payments set forth in the various judgments and settlements. The formula calls for calculation of a present value of future scheduled payments, discounted back to August 6, 1993, at a 5 percent rate, and a reduction of 20 percent of the sum of the discounted value of future payments plus the actual amount of any past payments
 
 
 [3]
 To the extent that their claims are unliquidated, the interests are the same. The only difference, for present purposes, is that some of the Safchuck appellants might hold judgments